# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00351-CV

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of Texas, Appellants**

**v.**

**J.D. Fields & Company, Inc., Appellee**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-003931, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

## O P I N I O N

This appeal arises from a tax protest suit filed by J.D. Fields & Company. *See* Tex. Tax Code § 112.052 (establishing cause of action). The Comptroller of Public Accounts appeals from the denial of its motion for summary judgment, arguing sovereign immunity bars J.D. Fields's suit.[1] We will affirm.

## BACKGROUND

The material facts are undisputed for purposes of this appeal. J.D. Fields is a pipe and piling distributor headquartered in Houston. In 2008, the Comptroller audited J.D. Fields's sales-tax compliance for the reporting periods between April 1, 2005 to May 31, 2008. The audit revealed that J.D. Fields was collecting local sales tax based on the location where the pipes were

---

[1] J.D. Fields sued the Comptroller and the Attorney General, *see* Tex. Tax Code § 112.053(a) (requiring that both officials be named as defendants in tax protest suit), and both moved for summary judgment. We refer to them collectively as the Comptroller because their interests align.

delivered rather than where the sale took place as required by law. *See id.* §§ 321.108(e), .203(a). The Comptroller's auditor, Marisol Purcell, informed J.D. Fields's Chief Financial Officer, Steve Fredrich, of the results in September 2008. Fredrich and Purcell met the following month for an exit conference to conclude the audit. Fredrich told Purcell he intended for the company to start collecting taxes based on the sale location on January 1, 2009, unless she told him to start immediately. According to Fredrich, Purcell replied: "No, I think that will be fine."[2]

In 2012, the Comptroller audited J.D. Fields for the reporting periods between June 1, 2008, and April 30, 2011. The final report reflected that J.D. Fields continued to improperly collect local taxes from June 1, 2008, to December 31, 2008, resulting in a delinquency of $731,039.17 plus interest. J.D. Fields requested relief from the assessment on the ground that it failed to collect the taxes in reliance on Purcell's representation to Fredrich. *See* 34 Tex. Admin. Code § 3.10(c) (Tex. Comp. Pub. Accts., Taxpayer Bill of Rights) ("The [C]omptroller will give relief to a taxpayer who follows erroneous advice given to the taxpayer by an agency employee."); *see also id.* § 3.5(b)(3)(K) (Waiver of Penalty or Interest) (providing that Comptroller "will consider" factors including "reliance on advice provided by the [C]omptroller's office pursuant to § 3.10(c) of this title" when deciding request to waive penalty or interest). The Comptroller denied relief.

J.D. Fields paid $860,055.76 (the delinquency plus interest) under protest and sued to recover the full amount. *See* Tex. Tax Code §§ 112.051–.058 (Suit After Protest Payment). J.D. Fields argued that the Comptroller erred by failing to grant relief under Rules

---

[2] We take this description of the exit conference from J.D. Fields's pleadings and Fredrich's deposition testimony. The Comptroller disputes this version of events but concedes we must take it as true when reviewing its jurisdictional challenge. *See, e.g.*, *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012).

2

3.10 and 3.5. The Comptroller filed a motion for summary judgment arguing, in relevant part, that sovereign immunity bars this claim. The district court denied the motion, and the Comptroller timely appealed the jurisdictional issue.

## LEGAL STANDARDS

Sovereign immunity from suit "prohibits suits against the state unless the state consents and waives its immunity." *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018). Immunity from suit "implicates a court's subject-matter jurisdiction," *id.*, and may be asserted "through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment," *see Alamo Heights Independent School District v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a governmental entity challenges jurisdiction on immunity grounds, the plaintiff "must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *See Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) (quoting *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)).

When a jurisdictional plea challenges the pleadings, as here, we "determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). In doing so, we "construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). We review a trial court's resolution of a jurisdictional plea de novo. *Meyers*, 548 S.W.3d at 486.

The parties' arguments turn on questions of statutory construction. Statutory construction presents a question of law that we review de novo. *Aleman v. Texas Med. Bd.*,

3

573 S.W.3d 796, 802 (Tex. 2019). Our goal when construing a statute is to ascertain and give effect to the Legislature's intent. *Id.* We ascertain that intent from the plain meaning of the words chosen "unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). However, we do not determine the meaning of an individual provision in isolation but consider "the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Id.* at 326. We further "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

## DISCUSSION

We begin our analysis with the protest statute. *See generally* Tex. Tax Code §§ 112.051–.058. A taxpayer who intends to bring a protest suit contending that a tax or fee "is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee" must both "pay the amount claimed by the state" and submit a written protest that states "fully and in detail each reason for recovering the payment." *Id.* § 112.051(a)–(b). If a taxpayer fulfills both requirements, section 112.052 waives sovereign immunity and allows the taxpayer to sue the State before the 91st date after the date of the protest payment. *Id.* § 112.052; *see In re Nestle USA, Inc.*, 359 S.W.3d 207, 212 (Tex. 2012) (orig. proceeding) (holding chapter 112's provision of taxpayer rights of action waives sovereign immunity from suit). The Comptroller acknowledges that J.D. Fields complied with these

4

procedural requirements but argues that the Legislature has not waived immunity for J.D. Fields's substantive claim.

The Comptroller's principal argument is that J.D. Fields has asserted an equitable estoppel claim instead of alleging that the Comptroller cannot legally collect the taxes at issue. *See* Tex. Tax Code § 112.051(a). We disagree. Equitable estoppel "arises where by fault of one, another has been induced to change his position for the worse." *Office of Atty. Gen. v. Scholer*, 403 S.W.3d 859, 862 (Tex. 2013). "The doctrine operates 'to prevent injustice and protect those who have been misled.'" *Id.* (quoting *Roberts v. Haltom City*, 543 S.W.2d 75, 80 (Tex. 1976)). While J.D. Fields alleged that it relied on Purcell's misstatement to its detriment, J.D. Fields does not allege that equitable principles entitle it to a refund. Instead, it argues that the Comptroller's rules entitled it to a refund and that the Comptroller failed to follow those rules. That the Comptroller's rules require it to take certain equitable considerations into account when deciding claims for relief does not affect the Comptroller's obligation to follow those rules when deciding claims. *See Harris Cty. Appraisal Dist. v. Texas Workforce Comm'n*, 519 S.W.3d 113, 119 (Tex. 2017) (explaining well-settled rule that agency errs if it "does not follow the clear, unambiguous language of its own regulation in making a decision"); *see also Rodriguez v. Service Lloyds Ins.*, 997 S.W.2d 248, 254 (Tex. 1999) (holding administrative rules "have the same force as statutes"). We conclude that J.D. Fields has not asserted an equitable estoppel claim.[3]

---

[3] Our conclusion makes it unnecessary to address the Comptroller's alternate arguments that allowing courts to adjudicate equitable estoppel claims in tax protest suits violates the state constitution's separation-of-powers provision and its prohibition on suspending the operation of statutes. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Even if J.D. Fields has not asserted an estoppel claim, the Comptroller maintains it would retain immunity because the Legislature has given the Comptroller "sole discretion" to settle tax claims. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161, 163 (Tex. 2016) (explaining that immunity absolutely protects exercises of discretion "where no specific, substantive or objective standards govern the exercise of judgment"). As a result, the Comptroller argues its immunity absolutely bars a claim to enforce the provisions of Rules 3.5 and 3.10, which merely set out how the Comptroller will exercise that authority.

We do not agree that the Comptroller's discretion is absolute. As the source of its unreviewable discretion, the Comptroller cites to subsection 111.103(a) of the Tax Code: "The [C]omptroller may settle a claim for a tax penalty or interest on a tax imposed by this title if the taxpayer exercised reasonable diligence to comply with the provisions of this title." Tex. Tax Code § 111.103(a). Subsection 111.103(a) grants the Comptroller discretionary authority to waive penalty or interest assessed on past-due taxes, *see Upjohn Company v. Rylander*, 38 S.W.3d 600, 611 (Tex. App.—Austin 2000, pet. denied) (discussing Comptroller's "discretionary authority to waive one or both amounts"), but makes the exercise of that discretion contingent on whether the taxpayer "exercised reasonable diligence," *see* Tex. Tax Code § 111.103(a). Thus, the statute provides a specific and objective standard to govern the Comptroller's exercise of judgment. *See Houston Belt*, 487 S.W.3d at 161. Moreover, other provisions of the Tax Code show the Legislature knows how to grant the Comptroller complete discretion in making decisions, *see, e.g.*, Tex. Tax Code § 171.006(e) ("A determination by the comptroller under this section is final and may not be appealed."), and subsection 111.103(a) contains no such language. Presuming that omission was intentional, as we must, *see TGS-NOPEC Geophysical*, 340 S.W.3d at 439, we reject the Comptroller's assertion that it has

6

unreviewable discretion to settle tax claims like the one presented here. *Cf. Henry v. Sullivan*, 499 S.W.3d 545, 553 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("[W]hen the commissioners court performs an act that is entrusted to its discretion, the district court has jurisdiction to determine whether the commissioners court abused that discretion.").

The Comptroller's final argument hinges on the statutory directive that trial in a tax protest suit is de novo. *See* Tex. Tax Code § 112.054 ("The trial of the issues in a suit under this subchapter is de novo."). Trial de novo means that the reviewing court will try "each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision." Tex. Gov't Code § 2001.173(a). The Comptroller argues that this prevents courts from reviewing a settlement decision that no longer exists. But requiring a trial court to treat a dispute as if there has been no prior agency decision does not preclude the court from considering the underlying facts and determining if the agency violated its own rules. In so doing, the court does not review the agency's decision but instead decides the same issue anew. *See id.*; *NTS Commc'ns, Inc. v. Hegar*, No. 03-16-00771-CV, 2018 WL 2728065, at *3 (Tex. App.—Austin June 7, 2018, pet. denied) (mem. op.) ("A taxpayer who sues for a tax refund after an administrative hearing . . . is like a plaintiff in any other cause of action, and hence carries the burden to establish its eligibility to a refund." (quoting *GATX Terminals Corp. v. Rylander*, 78 S.W.3d 630, 634 (Tex. App.—Austin 2002, no pet.))); *see also Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018) (explaining that "in a trial de novo, a court may consider arguments and evidence that are introduced afresh"). The trial de novo procedure does not prevent a court from deciding J.D. Fields's claim.

7

We conclude that J.D. Fields's suit fits within the plain language of the waiver of immunity for claims "that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee." *See* Tex. Tax Code § 112.051(a). We overrule the Comptroller's issues on appeal.

## CONCLUSION

We affirm the denial of the Comptroller's plea to the jurisdiction as set forth in its motion for summary judgment.

_____

Edward Smith, Justice

Before Chief Justice Rose and Justices Triana and Smith

Affirmed

Filed: March 19, 2020