

# NUMBER 13-23-00062-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

UNIVERSITY OF TEXAS
RIO GRANDE VALLEY,                                                    Appellant,

v.

ALFREDO CASTILLO,                                                     Appellee.

## On appeal from the County Court at Law No. 5 of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Benavides**

In this interlocutory appeal from the denial of a plea to the jurisdiction, appellant University of Texas Rio Grande Valley (UTRGV) contends that appellee Alfredo Castillo failed to allege certain prima facie elements of his racial discrimination and retaliation

claims. UTRGV further argues that Castillo's claims for civil conspiracy are intentional torts and thus fall outside the Texas Tort Claims Act's (TTCA) limited waiver of immunity. We reverse and remand in part and reverse and render in part.

## I.   BACKGROUND

According to his first amended petition, Castillo, a Hispanic male, was hired as the Head Athletic Trainer at UTRGV on December 4, 2017. Castillo served in this position without incident until UTRGV hired Chasse Conque, a non-Hispanic White male, as its new Athletic Director in August 2019. Castillo alleges that "[f]rom the beginning, Mr. Conque's demeanor and conduct was questionable[,] and he seemed to target Mr. Castillo with comments that reeked of racial undertones." Castillo does not provide any further details about these alleged comments or when they occurred.

Castillo acknowledges friction between the two men arose in March 2020. Specifically, "Conque did not agree with [his] recommendation to suspend two students from the Sports Medicine program [or his] proposed COVID-19 reentry plan for student athletes." Conque ultimately terminated Castillo's employment with UTRGV on May 28, 2020.

Castillo alleges that his termination was pretextual and that the actual reason for his termination was retaliation and racial discrimination. He further alleges that his termination was "part of a larger unwritten plan or scheme" between Conque, UTRGV's president, "and other unknown co-conspirators." Castillo included claims for civil conspiracy in his petition based on the underlying claims of retaliation and discrimination.

UTRGV filed a plea to the jurisdiction challenging the sufficiency of Castillo's first

2

amended petition. UTRGV argued that Castillo failed to plead basic facts that would establish his retaliation and racial discrimination claims. UTRGV further argued that Castillo's civil conspiracy claims are excepted from the TTCA's waiver of immunity because civil conspiracy is an intentional tort.

During the ensuing hearing, Castillo's counsel offered additional details about his discrimination claim that were not alleged in his live pleading. Rather than discussing comments that had a "racial undertone," as alleged in Castillo's petition, counsel claimed that Conque told Castillo "point blank: [']I have never had to pay somebody like you this much money.[']" Castillo's counsel further alleged that Castillo's replacement was a non-Hispanic White person and that "similarly situated employees of UTRGV, who[] were white, received raises and cost of living adjustments" that Castillo did not receive before he was terminated. Castillo's counsel suggested that UTRGV's arguments were "more fitting in a summary judgment [motion]." He assured the trial court that "[t]he facts are there" to prove causation but asked for the opportunity to conduct discovery before "we get into that."

UTRGV reiterated that its plea to the jurisdiction was an appropriate vehicle to challenge the sufficiency of Castillo's pleadings. UTRGV also noted that its plea had been pending for more than five months, but Castillo had not taken the opportunity to amend his pleadings to include these new allegations or to conduct any discovery. The trial court denied the plea, and this interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

3

## II.     STANDARD OF REVIEW

Subject matter jurisdiction is essential to a court's authority to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

Sovereign immunity is a common-law doctrine that protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008) ("*Garcia I*"). Governmental entities in Texas generally enjoy immunity from suit unless the Legislature has expressly waived their immunity by statute. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). This protection extends to state universities, like UTRGV. *See Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021).

"A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction." *Town of Shady Shore v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012)). Accordingly, when a plaintiff sues a governmental entity, they must allege facts that fall within a legislative waiver of immunity. *Id.* (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). A governmental defendant may challenge the trial court's jurisdiction by attacking the plaintiff's pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

4

Whether a plaintiff has sufficiently pleaded a waiver of immunity is a question of law we review de novo. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). In conducting our review, we construe the pleadings liberally and look to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226. "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226–27. On the other hand, "[i]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

In the face of a plea to the jurisdiction, a plaintiff is entitled to stand on his pleading, and if the trial court determines that the pleading is jurisdictionally firm, but the reviewing court disagrees, the reviewing court may consider whether the plaintiff has made a "suggestion as to how to cure the jurisdictional defect." *Tex. A & M. Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). In that situation, the plaintiff "must be given an opportunity to amend" unless it would be impossible to cure the pleading defect. *Id.*

### III. RACIAL DISCRIMINATION & RETALIATION

By its first two issues, UTRGV argues that the trial court erred in denying its plea to the jurisdiction because Castillo failed to state a claim for racial discrimination or retaliation.[1] UTRGV urges us to dismiss both claims for want of jurisdiction.

---

[1] Castillo has not filed a responsive brief to aid us with our disposition of this appeal.

**A.    Applicable Law**

The Texas Commission on Human Rights Act (TCHRA) prohibits employers from discriminating against employees based on "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051. The TCHRA also prohibits employers from retaliating against employees for engaging in certain protected activities, such as opposing discriminatory practices, reporting discrimination, or participating in an investigation. *Id.* § 21.055. The TCHRA waives a governmental employer's immunity from suit for violations under the act. *Alamo Heights*, 544 S.W.3d at 770 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012) ("*Garcia II*")); *see* TEX. LAB. CODE ANN. § 21.254 (permitting an employee to "bring a civil action against" their employer).

However, the TCHRA "waives immunity from suit only when the plaintiff actually states a claim for conduct that would violate the TCHRA." *Garcia II*, 372 S.W.3d at 637. Simply put, "a plaintiff must plead the elements of h[is] statutory cause of action." *Id.* A plaintiff who fails to allege a viable claim under the TCHRA is subject to dismissal for want of jurisdiction. *Id.*

Violations of the TCHRA can be established with either direct or circumstantial evidence. *Alamo Heights*, 544 S.W.3d at 781–82. For cases based on circumstantial evidence, Texas courts employ the three-part *McDonnell Douglas* burden-shifting framework. *Id.* at 782 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). "Under this framework, the plaintiff is entitled to a presumption of discrimination if []he meets the 'minimal' initial burden of establishing a prima facie case of

6

discrimination"—that is, the plaintiff must provide evidence of each element of his TCHRA cause of action. *Garcia II*, 372 S.W.3d at 634, 638. "Although the precise elements of this showing will vary depending on the allegations, . . . the plaintiff's burden at this stage of the case 'is not onerous.'" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Only if the plaintiff establishes a prima facie case of discrimination will the burden then shift to the defendant to negate or rebut the plaintiff's prima facie case; this generally requires that the defendant produce evidence of "a legitimate, nondiscriminatory reason" for the defendant's actions. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020).

Thus, "[f]or a plaintiff who proceeds along the *McDonnell Douglas* burden-shifting framework, the prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA." *Garcia II*, 372 S.W.3d at 637. A plaintiff's failure to make a prima facie case, however, "means the plaintiff never gets the presumption of discrimination," and the claim should be dismissed because the court lacks jurisdiction. *Id.*

## B.      Racial Discrimination

To establish a prima facie case of employment discrimination, Castillo must show that he: (1) is a member of a protected class, (2) was qualified for his position, (3) was subject to an adverse employment decision, and (4) was either (a) replaced by someone outside of the protected class or (b) treated less favorably than others who were similarly situated but outside the protected class. *See Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 434 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing

7

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). By its first issue, UTRGV argues that Castillo failed to state a claim for racial discrimination because he failed to allege that he was treated less favorably than a similarly situated person who was outside of his protected class.

In his live petition, Castillo alleges that "there was no legitimate justification for his termination"; instead, his "termination [wa]s part of a larger unwritten plan or scheme [by UTRGV] to retaliate against and discriminate against him based on his race." To support his claim that his termination was motivated by racial animus, Castillo, a Hispanic male, alleges that his new supervisor, Conque, a non-Hispanic White male, "seemed to target [him] with comments that reeked of racial undertones." Castillo further alleges that prior to his termination, he "never received a reprimand and has always received positive evaluations." Conspicuously missing from his pleading, though, is an allegation that Castillo was either replaced by someone outside of his protected class or treated less favorably than others who were similarly situated but outside the protected class. *See Donaldson*, 495 S.W.3d at 434. Thus, we agree with UTRGV that Castillo's racial discrimination claim was facially deficient. That is, Castillo failed to satisfy his initial obligation to affirmatively demonstrate the trial court's jurisdiction by alleging basic facts that would establish a prima facie case of discrimination. *See Garcia II*, 372 S.W.3d at 637; *Town of Shady Shore*, 590 S.W.3d at 550.

However, Castillo's failure to plead necessary facts to support each element of his discrimination claim is a matter of pleading sufficiency, not an incurable jurisdictional defect. *See Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397–98 (Tex. 2022).

8

Moreover, during the plea hearing, Castillo claimed that his replacement was a non-Hispanic White person and that "similarly situated employees of UTRGV, who[] were white, received raises and cost of living adjustments" that Castillo did not receive before he was terminated. Either of these allegations, if included in his petition, would satisfy the minimal showing Castillo must make at this early stage in the proceedings. *See Donaldson*, 495 S.W.3d at 434. Therefore, the trial court should have granted UTRGV's plea with respect to this claim but afforded Castillo the opportunity to amend his petition before dismissing the claim outright. *See Miranda*, 133 S.W.3d at 226–27.

Accordingly, we grant UTRGV's first issue in part, but rather than dismiss Castillo's racial discrimination claim, as UTRGV suggests, we remand the claim to the trial court with instructions that Castillo be granted an opportunity to replead. *See Koseoglu*, 233 S.W.3d at 840.

## C.     Retaliation

To establish a retaliation claim, the employee must show (1) he engaged in a protected activity under the TCHRA; (2) he experienced a material adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Alamo Heights*, 544 S.W.3d at 782. By its second issue, UTRGV argues that the first element is absent from Castillo's pleading, which necessarily means that he also failed to establish the third element. We agree.

The only activities mentioned in Castillo's pleading were his development of a COVID-19 safety plan and his recommendation that two students be suspended from the sports medicine program. Neither of these is a protected activity. *See* TEX. LAB. CODE

9

ANN. § 21.055. Furthermore, unlike Castillo's racial discrimination claim, there is nothing in the record to suggest that Castillo ever engaged in a protected activity that could serve as a basis for a retaliation claim. To the contrary, Castillo conflates the two claims in his pleading by alleging that his termination was part of UTRGV's plan "to retaliate against and discriminate against him *based on race*." (Emphasis added). "A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not. Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, such as making a discrimination complaint." *Alamo Heights*, 544 S.W.3d at 763–64. Therefore, we conclude that Castillo failed to allege a viable retaliation claim and that remanding this claim "would serve no legitimate purpose." *See Koseoglu*, 233 S.W.3d at 840. UTRGV's second issue is sustained.

## IV.    CIVIL CONSPIRACY

Under a section titled "CAUSES OF ACTION," Castillo includes a separate claim for "CIVIL CONSPIRACY." In support of this claim, Castillo alleges that "UTRGV, through its President, [Conque,] and other unknown co-conspirators[,] entered into a conspiracy to . . . terminate [Castillo] from his employment." He further alleges that the "civil conspiracy included overt acts of retaliation and discriminatory conduct against [him] . . . done in violation of law." By its final issue, UTRGV argues that it is immune from Castillo's civil conspiracy claims because civil conspiracy is "an intentional tort," *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996), and intentional torts are excepted from the TTCA's waiver of immunity. *See* TEX. CIV. PRAC. & REM CODE ANN. § 101.057 ("This chapter does not apply to a claim . . . arising out of assault, battery, false

10

imprisonment, or any other intentional tort . . . ."). We agree that Castillo's civil conspiracy claims should be dismissed but for different reasons.

The Supreme Court of Texas recently clarified that "civil conspiracy is a theory of vicarious liability and not an independent tort." *Agar Corp. v. Elctro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). A so-called "derivative tort," civil conspiracy "survives or fails alongside" the underlying tort alleged. *Id.* at 141. Accordingly, Castillo's civil conspiracy claim based on retaliation must suffer the same jurisdictional fate as his retaliation claim. *See Rennels v. NME Hosps., Inc.*, 965 S.W.2d 736, 740 (Tex. App.—El Paso 1998), *aff'd*, 994 S.W.2d 142 (Tex. 1999) ("Finally, as Rennels may maintain her retaliation claim [against her employer], we conclude she has established material fact issues regarding her claim of civil conspiracy against the hospital, as well."); *see also Jaramillo v. City of Tex. City*, No. 01-20-00654-CV, 2022 WL 363271, at *4 (Tex. App.—Houston [1st Dist.] Feb. 8, 2022, no pet.) (mem. op.) ("We also note that civil conspiracy is not a standalone tort. It is a derivative tort that depends on the legal viability of an underlying tort, in this case fraud. Because the court lacks jurisdiction over Jaramillo's fraud claim, Jaramillo's civil conspiracy claim does not survive.").

Although we are remanding Castillo's discrimination claim for repleading, Castillo's civil conspiracy claim based on discrimination cannot be saved. Setting aside the viability of each underlying claim, Castillo's concept of civil conspiracy is not legally sound. As a theory of vicarious liability, the purpose of civil conspiracy is to permit "recovery against co-conspirators who did not commit the underlying unlawful act." *Agar Corp.*, 580 S.W.3d at 142. For example, in *Rennels*, a doctor brought a claim for civil conspiracy against a

11

hospital that allegedly conspired with the doctor's employer to retaliate against her in violation of the TCHRA. 965 S.W.2d at 737. The hospital was not liable under the TCHRA as the employer that committed the unlawful act, but it could be vicariously liable as a co-conspirator. *Id.* at 740.

Here, Castillo alleges that his fellow employees at UTRGV conspired to discriminate and retaliate against him, but as Castillo's former employer, UTRGV is already vicariously liable under the TCHRA for the discriminatory and retaliatory conduct of these employees. *See* TEX. LAB. CODE ANN. §§ 21.051, 21.254, 21.055. Indeed, that is why Castillo sued UTRGV for discrimination and retaliation in the first place. Thus, while Castillo's conspiracy allegation may lend factual support to his remaining discrimination claim against UTRGV as his former employer, unlike a valid civil conspiracy claim, it does not permit an otherwise unavailable theory of recovery against UTRGV as a co-conspirator. *See Agar Corp.*, 580 S.W.3d at 142; *Rennels*, 965 S.W.2d at 740.

Because Castillo has not alleged legally viable claims for civil conspiracy against UTRGV, Castillo has failed to affirmatively demonstrate the trial court's jurisdiction over these claims. *See Matzen v. McLane*, 659 S.W.3d 381, 389 (Tex. 2021). Consequently, the trial court erred when it denied UTRGV's jurisdictional challenge to Castillo's conspiracy claims. *See id.* Finally, like Castillo's retaliation claim, we conclude that remanding these claims for further pleading would be futile. *See Koseoglu*, 233 S.W.3d at 840. UTRGV's third issue is sustained.

## V. CONCLUSION

We reverse the trial court's order denying UTRGV's plea to the jurisdiction and

12

render judgment dismissing Castillo's claims for retaliation and civil conspiracy for want of jurisdiction. We remand Castillo's claim for racial discrimination for further proceedings consistent with this memorandum opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
9th day of November, 2023.